UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER M. TASKER, II,<br><br>    Petitioner,<br><br>v.<br><br>JEFFREY A. UTTECHT,<br><br>    Respondent. | NO. 1:17-CV-3165-TOR<br><br>ORDER DENYING PETITIONER'S SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS |

BEFORE THE COURT is Petitioner Christopher M. Tasker II's Second Amended Petition for Writ of Habeas Corpus. ECF No. 11. Respondent Jeffrey A. Uttecht has answered the Petition and filed relevant portions of the state court record. ECF Nos. 14-15. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Petitioner's Second Amended Petition for Writ of Habeas Corpus (ECF No. 11) is **DENIED**.

## BACKGROUND

On September 26, 2017, Petitioner Christopher M. Tasker, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus. ECF No. 1. On February 26, 2018,

ORDER DENYING PETITIONER'S SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS ~ 1

Petitioner filed a Second Amended Petition for Writ of Habeas Corpus. ECF No. 11. Petitioner, a prisoner at the Coyote Ridge Corrections Center, is challenging his Yakama County jury convictions for first degree kidnapping, attempted first degree robbery, and unlawful possession of a firearm. ECF Nos. 11 at 1; 14 at 1; 15-1 at 2-8 (Ex. 1). The underlying facts and procedural history, summarized by the Washington Court of Appeals on direct appeal, are as follows:

> On June 13, 2013, Gloria Campos-White was sitting in her parked car outside of Selah Intermediate School, waiting for her daughter's basketball practice to finish, when a man walked up to her open driver's side window, pointed a gun in her face, and demanded she give him her purse. She complied, telling him as she handed him the purse that she did not have any money.
>
> After the man had her purse, he reached for the handle of the rear passenger door and after struggling with it for a moment, was able to get into the back seat, where he ordered Ms. Campos-White to drive. She would later testify that he still had the gun when he entered the car, and that although she did not see it again, "at one point when we were actually driving I thought I heard the clicking of something behind my head." Report of Proceedings (RP) at 430-31.
>
> The man gave Ms. Campos-White directions as she drove, but he did not tell her where they were going. She recalls driving "up a curved hill" and that they traveled through orchards. RP at 433. But not being familiar with the Selah area, she did not know where they were. She believed that he was directing her to an undeveloped area, and that "there [was] nothing back there for him to be needing to take me up there." RP at 448.
>
> Not knowing his intentions, Ms. Campos-White felt desperate to get away. Without slowing her car, she waited for a gap in oncoming traffic, unbuckled her seatbelt, opened the car door, and jumped out of the moving vehicle. With no one at the wheel, her car soon struck a bank on the side of the road and flipped on its side. Residents of a

nearby home who heard the crash ran out to stop traffic and attend to Ms. Campos-White. They saw a man climb out of a passenger side door of her car and run off. In addition to cuts, bruises, and a sprained ankle, Ms. Campos-White sustained a severe concussion that led to the loss of her ability to taste or smell.

The man who abducted her was not found in the area, though a single shoe that did not belong to the Campos-White family was found near the hatchback of the car. No firearm was ever recovered.

Ultimately, based on video surveillance recorded by the Selah school, Ms. Campos-White's identification, and physical evidence recovered from the scene of the crash, Christopher Tasker was arrested and charged with first degree kidnapping, attempted first degree robbery, and first degree unlawful possession of a firearm. The State sought firearm enhancements in connection with both the first degree kidnapping and the attempted first degree robbery charges.

At trial, Ms. Campos-White identified Mr. Tasker as the man who kidnapped and attempted to rob her. She described the gun that Mr. Tasker used, explaining it was a dark color and small enough to be held with one hand. She admitted during the State's examination that she did not know much about guns or firearms, and testified that she had "never seen a gun in real life." RP at 451. She also admitted that she would not know the difference between a revolver and semiautomatic handgun by name, but knew that they looked different. She never wavered from her testimony that Mr. Tasker had been armed with a gun, however. Asked on cross-examination whether there was "[a]ny chance it could've been anything besides a handgun," she answered, "No." RP at 452.

At the close of the State's case, Mr. Tasker moved to dismiss the request for firearm enhancements and the charge of unlawful possession of a firearm. Relying on two decisions of the Washington Supreme Court and one of Division Two of our court, he argued that the State was required, but failed, to prove the firearm testified to by Ms. Campos-White was operable. The trial court reserved ruling, explaining that if the jury answered yes to the firearm special verdicts, it would hear further from Mr. Tasker.

> The defense devoted its entire closing argument to urging the jury that there was reasonable doubt whether Mr. Tasker had been armed with a real firearm. It emphasized Ms. Campos-White's nonspecific description of the gun, her inexperience with firearms, and an asserted hesitancy in her testimony. It also told the jury that the purpose of the special verdicts they were being asked to complete was because the State wanted "more" than just conviction of the crimes and was "asking for more than they can prove." RP at 760. The jury nonetheless answered yes to the special verdicts asking whether Mr. Tasker was armed with a "firearm" as defined by Washington law, in addition to finding Mr. Tasker guilty of the crimes charged. Clerk's Papers (CP) at 41, 43.
>
> In a hearing on a posttrial motion to set aside the jury's verdict on the firearm possession findings, the trial court informed the parties that it had concluded after reading cases cited by the parties that Division Two of the Court of Appeals "seems to focus more on the question of has the prosecution proven that the gun was operable," Division One "appears to focus more on the question of was the gun real," a "slightly different question[,]" and, "[u]nfortunately, there are no cases from Division [Three]. I have no idea what Division [Three] would do with the facts that we have." RP at 792. The court denied the motion, "recognizing that it's a razor thin issue and it could go either way on appeal." RP at 806.
>
> At sentencing, Mr. Tasker's lawyer asked the court to treat the attempted robbery and the kidnaping as the same criminal conduct for purposes of calculating an offender score. The court refused, noting that the robbery was completed before Mr. Tasker entered the vehicle.

ECF No. 15-1 at 12-16 (Ex. 2).

On April 28, 2016, the Washington Court of Appeals affirmed Petitioner's conviction and sentence, remanding for the limited purpose of amending the judgment and sentence to strike the discretionary legal financial obligations. *Id.* at 43. Petitioner then filed a petition for review in the Washington Supreme Court.

*Id.* at 111 (Ex. 5). On September 28, 2016, the Washington Supreme Court denied review. *Id.* at 169 (Ex. 6).

On November 29, 2016, Petitioner filed a personal restraint petition in the Washington Court of Appeals. ECF No. 15-2 at 2 (Ex. 8). On February 3, 2017, the Washington Court of Appeals denied the petition. *Id.* at 134 (Ex. 9). Petitioner then moved the Washington Supreme Court for discretionary review, which was denied on July 10, 2017. *Id.* at 172 (Ex. 11).

Petitioner filed this amended federal 28 U.S.C. § 2254 habeas petition on February 26, 2018, generally alleging there was insufficient evidence. ECF No. 11 at 5. The parties agree that Petitioner properly exhausted his state court remedies regarding this claim. ECF Nos. 11 at 7; 14 at 5.

## DISCUSSION

**A. Standard of Review**

A court will not grant a petition for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless the petitioner can show that the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Section 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings, … which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotations and citation omitted).

A rule is "clearly established Federal law" within the meaning of section 2254(d) only if it is based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). A state court's decision is contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (internal quotations and citation omitted). The state court need not cite to the controlling Supreme Court precedent, nor need it even be aware of the relevant case law, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* "[A]n unreasonable application of" clearly established federal law is one that is "objectively unreasonable, not merely wrong; even clear error will not suffice." *White*, 134 S.Ct. at 1702 (internal quotations and citation omitted). Of utmost importance, circuit precedent may not be used "to refine or sharpen a general

principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

In order to obtain a writ of habeas corpus, "[a] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Flournoy v. Small*, 681 F.3d 1000, 1004 (9th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). Under the harmless error standard of review adopted by the Supreme Court, even if a reviewing court finds constitutional error, the challenged error must have caused "actual prejudice" or had "substantial and injurious effect or influence" in determining the jury's verdict in order for the court to grant habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

> If [the section 2254(d)] standard is difficult to meet, that is because it was meant to be …. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the

    claim being presented in federal court was so lacking in justification
that there was an error well understood and comprehended in existing
law beyond any possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102-03 (citations omitted).

    The petitioner bears the burden of showing that the state court decision is contrary to, or an unreasonable application of, clearly established precedent. *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). In conducting its habeas review, a federal court looks "to the last reasoned decision of the state court as the basis of the state court's judgment." *Merolillo v. Yates*, 663 F.3d 444, 453 (9th Cir. 2011) (citation omitted). A rebuttable presumption exists: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

### B. Evidentiary Hearing

    "[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)) (evidentiary hearing is not required where the petition raises solely questions of law or where the issues may be resolved on the basis of the state court record). Indeed, review is limited to the record that was before the state court. *Pinholster*, 563 U.S at 181 ("[R]eview under [28 U.S.C.] § 2254(d)(1) is limited to the record

that was before the state court that adjudicated the claim on the merits."). "Because federal habeas is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal, the types of errors redressable under § 2254(d) should be apparent from the record." *Ryan v. Gonzales*, 568 U.S. 57, 75 (2013) (internal quotations and citation omitted). Here, Petitioner has not established the limited circumstances for entitlement to an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2). *See* ECF No. 14 at 6-7. Accordingly, the Court rejects any suggestion for an evidentiary hearing.

**C. Sufficiency of Evidence**

Petitioner contends that his conviction was based on insufficient evidence, violating the due process clause and resulting in a constitutionally unlawful restraint. ECF No. 11 at 16. In considering a claim for sufficiency of evidence, the relevant question for a reviewing court to decide "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). When making its inquiry, "[t]he reviewing court must respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v.*

*Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996) (citing *United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir. 1987)).

As an initial matter, Petitioner's only claim for relief is sufficiency of the evidence for his firearm conviction and enhancements. The Court does not consider Petitioner's arguments regarding "lack of facial-recognition." ECF No. 16 at 20. Petitioner asserts in his response that the photo line-up given to Ms. Campos-White was misleading because "Tasker's photo with a bad oral appearance stood-out from the other five photos of individuals that appeared to have great smiles and good oral hygiene." *Id.* at 7. Petitioner did not assert this claim in state court nor did he assert it in his Petition here. Accordingly, the Court only considers sufficiency of the evidence regarding the firearm, which was properly exhausted by the state courts and argued in his Second Amended Petition.

The Washington Court of Appeals extensively considered on direct review Petitioner's contention that the State failed to prove he wielded an operable firearm during the crimes. *See* ECF No. 15-1 at 16-33. The Washington Court of Appeals determined, "Evidence that a device appears to be a real gun and is being wielded in committing a crime is sufficient circumstantial evidence that it is a firearm." *Id.* at 33. The Washington Court of Appeals found:

> The State presented sufficient evidence of what it was required to prove: that the gun Mr. Tasker used in the assault was a gun "in fact," …. Mr. Tasker pointed the gun at Ms. Campos-White's face in demanding her purse and used it to advance a kidnapping. Visibility

was good; the crime occurred in daylight on a June afternoon. Ms. Campos-White saw the gun at close range and was unwavering in her testimony that it was a gun. While she forthrightly admitted to little experience with guns "in real life," she was old enough, as the mother of a middle schooler, to have seen guns in photographs, on the news, in television programs and in movies. The clicking noise she described hearing behind her head was consistent with Mr. Tasker's use of a real gun. Collectively, the evidence was sufficient to establish the gun met the definition of a "firearm" under RCW 9.41.010(9).

*Id.* at 34.

In denying discretionary review of Petitioner's personal restraint petition, the Washington Supreme Court also found that Petitioner's sufficiency of the evidence claim to be without merit, noting that "[t]he victim's testimony in this case was sufficient for the jury to find beyond a reasonable doubt that Mr. Tasker unlawfully possessed a firearm." ECF No. 15-2 at 174 (Ex. 11).

Petitioner's argument here that the State presented insufficient evidence to support that he ever held or wielded a "Ballistic Firearm" during the crime was rejected previously by the Washington Court of Appeals and Washington Supreme Court. *See* ECF No. 16 at 12. The state courts found that the gun's real appearance and that it was being wielded during the crime is sufficient circumstantial evidence that it is a firearm under RCW 9.41.010. ECF Nos. 15-1 at 33; 15-2 at 174. The State provided sufficient evidence that Petitioner wielded a firearm because Ms. Campos-White testified that Petitioner pointed the gun at her

face in daylight and she heard a clicking noise consistent with a real gun. *See* ECF No. 15-1 at 34. The State is not required to produce the firearm, contrary to Petitioner's contentions. *See* ECF No. 11 at 33, 36.

In viewing the evidence in favor of the prosecution, a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This Court respects the exclusive province of the factfinder and the decisions of the Washington Court of Appeals and Washington Supreme Court. This Court finds that Petitioner fails to show that the state court adjudication in his case "resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." 28 U.S.C. § 2254(d). The state courts properly found that it is in the province of the fact finder to credit testimony, and that a rational trier of fact could have found Petitioner guilty of the crimes charged and the two firearm enhancements. Accordingly, this claim is denied.

**D. Certificate of Appealability**

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a

constitutional right." *See* 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

This Court concludes that Petitioner is not entitled to a COA because he has not demonstrated that jurists of reason could disagree with this Court's resolution of his constitutional claims or could conclude that any issue presented deserves encouragement to proceed further.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Petitioner's Second Amended Petition for Writ of Habeas Corpus (ECF No. 11) is **DENIED**.

2. Any appeal taken by Petitioner of this matter would not be taken in good faith as he fails to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is **denied**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to the parties, and **CLOSE** the file.

**DATED** July 12, 2018.



THOMAS O. RICE
Chief United States District Judge

ORDER DENYING PETITIONER'S SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS ~ 13